## Commonwealth v. Petck.

*Criminal law — Mayhem — Fingers—Amputation following biting—Question for jury.*

1. The 80th section of the Act of March 31, 1860, P. L. 403, making the biting off of a limb or member of an opponent, while fighting, a misdemeanor, does not require the severance to be immediate and during the fray. It is a violation of the law if the injury is inflicted during the encounter, and the actual severance, made necessary by the injury, follows as a direct and probable consequence.

2. It is ordinarily the function of the jury to determine whether the injury is of the character necessary to constitute mayhem and to pass upon such related questions as whether or not the ultimate amputation of a finger bitten during a fight was the direct, natural or probable consequence of the defendant's unlawful act.

3. The jury having, by their verdict, determined that a surgical amputation was the natural and probable consequence of the biting of the finger of his opponent by the defendant, and there being ample competent evidence to support such a finding, there is no reason to support a new trial on the ground that the severance did not take place during the fight.

Motion for new trial. Q. S. Montgomery Co., Feb. Sess., 1922, No. 1.

*Frank X. Renninger*, District Attorney, for Commonwealth.

*Williams & Egan*, for defendant.

MILLER, J., March 30, 1922.—The indictment, which was laid under section 80 of the Act of March 31, 1860, P. L. 403, charged the defendant with unlawfully, voluntarily, maliciously and of purpose biting off the finger of his opponent in a fight. He was convicted, and the only reason that he assigns in support of his motion for a new trial is that the evidence failed to disclose that he had done so within the meaning of the act. The verdict justifies, and a correct understanding of the exact question involved requires, the following brief statement of facts:

These two men, both of whom were drunk, had met on the evening of last Armistice Day at the home of a mutual friend, where their noise and disorder soon disturbed the sleeping children, and they were ordered to leave. As they did so, together, the prosecutor invited his companion to fight outside. Neither had any weapon other than his natural ones. The invitation was accepted and the combat took place in the street. They were soon separated, but not until after the defendant had succeeded in getting into his mouth and biting severely the ring finger of the prosecutor's right hand.

Little was thought of the injury at the time and the latter returned to his work as a moulder on the following day. The finger was first treated by his wife with home remedies, but it grew gradually worse. On the 14th, the nurse at prosecutor's place of employment gave it some attention. Thereafter, and for several days, a nearby druggist looked after it, but, as it had become infected, he finally urged the prosecutor to go to the local hospital. He did so on the 18th, by which time gangrene had set in. All was done by the hospital that could be done, but the condition of the finger kept getting

worse. In consequence, it became necessary to amputate it at its second joint, and the same was done on Dec. 28th. The question raised by the motion is whether or not these facts are sufficient to support the verdict, or, as it may be otherwise expressed, are they sufficient to constitute a biting off within the contemplation of the act, which must, of course, be construed strictly?

In the first place, the defendant bit the finger severely and it is now off, in that it has been amputated at the second joint.

And in the next, the surgeon who performed the operation, but, of course, knew nothing about the original circumstances, testified concerning the condition of, and the marks upon, the finger when he first saw it on Nov. 18th; said that, in his opinion, both might have been caused by the bite of human teeth, and stated that the ultimate amputation was the direct consequence of the original injury. There was no testimony in the case from which it could have been found, or reasonably inferred, that the loss of the finger was the effect of any independent, intervening cause. It was, therefore, expressly left to the jury, under proper instructions, to find from the testimony whether or not such loss was the direct consequence of defendant's act, and the verdict indicates that they found that it was.

The Commonwealth discharged its burden of proving affirmatively and beyond a reasonable doubt, by either direct or circumstantial evidence, that the act of the defendant had been performed with the requisite specific intent, and it followed, necessarily, that the defendant was presumed to intend, and might be held responsible for, the necessary or the natural and probable consequences of his voluntary act. This general principle of law was referred to by Mr. Justice Agnew in Com. v. Drum, 58 Pa. 9, where, at page 17, he says: "He who uses upon the body of another, at some vital part, with a manifest intention to use it upon him, a deadly weapon, . . . must, in the absence of qualifying facts, be presumed to know that his blow is likely to kill; and, knowing this, must be presumed to intend the death which is the probable and ordinary consequence of such an act."

A specific intent to maim is generally held an essential ingredient of the offence of mayhem, and is made such by our Act of March 31, 1860, P. L. 382; but even such intent may be inferred or presumed if the act was done deliberately and the disfigurement was reasonably to be apprehended as the natural and probable consequence of the act. See L. R. A. 1916 E, note, page 494, and cases cited, and 40 L. R. A. (N. S.) 1132, note, and People v. Nunes, 190 Pac. Repr. 486.

Whether the injury is of the character necessary to constitute mayhem must ordinarily be determined by the jury (Green v. State, 15 A. & E. Anno. Cases, 81), whose function it was in this case also to pass upon the related question of fact of whether the ultimate amputation of the finger was the direct, natural or probable consequence of defendant's unlawful act. In light of the testimony and all the circumstances, no fault is to be found with their verdict. The act, in making the biting off a limb or member of an opponent while fighting a misdemeanor, does not, in our opinion, require its severance to be immediate and during the fray. It is none the less a violation of the law if the injury is inflicted during the encounter, but the actual severance, which is made necessary by that injury and follows as a direct and probable consequence of it, does not take place until afterwards.

And now, March 30, 1922, the motion for a new trial is overruled, the reason is dismissed, and the defendant is ordered to appear for sentence in court room No. 1 on Monday, April 3, 1922, at 10 o'clock A. M.

From Montgomery Evans, Norristown, Pa.